IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHRISTINE BERNICE DANIELS,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>    Defendant. | Case No. 4:15-cv-04041-JEH |

### Order and Opinion[1]

Now before the Court is the Plaintiff's, Claimant Christine Bernice Daniels, Motion for Summary Judgment (Doc. 15) and Commissioner of Social Security's, Carolyn W. Colvin, Motion for Summary Affirmance (Doc. 18). Plaintiff appeals from the denial of her application for a period of disability and disability insurance benefits, pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The Motions are fully briefed, and for the reasons stated herein, the Court denies Plaintiff's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Affirmance.

### I

On July 11, 2012, Daniels filed a Title II application for a period of disability and disability insurance benefits. (AR 193). In her application, Daniels alleged disability beginning on July 9, 2012. (AR 194). The claim was denied initially on October 25, 2012 (AR 102), and upon reconsideration on February 20, 2013 (AR

---

[1] The parties have consented to the Jurisdiction of the U.S. Magistrate Judge. (Doc. 14).

1

110). On March 20, 2013, Daniels filed a timely request for hearing concerning her application for disability insurance benefits. (AR 15). An initial hearing was held before the Honorable Robert H. Schwartz, administrative law judge (ALJ), on October 1, 2013 via video, during which time Daniels was represented by Cherie Pichone, non-attorney representative. (AR 38). Following the hearing, the ALJ determined that Daniels was not disabled from July 9, 2012 through the date of the decision. (AR 32). Daniels' request for review by the Appeals Council was denied on February 18, 2015 (AR 1), making the ALJ's decision the final decision of the Commissioner. Daniels filed the instant civil action seeking review of the ALJ's decision on April 15, 2015. (Doc. 1).

## II

At the time she applied for benefits, Christine Daniels was a nearly 46 year old divorced woman living in East Moline, Illinois. (AR 193). Under the Medical Vocational Rules, which provide guidelines for finding a claimant disabled, the Claimant was considered a "younger person" prior to her 50th birthday, whereupon she would be categorized as "closely approaching advanced age". 20 C.F.R. § 404.1563(b). Daniels has a 12th grade education with specialized training in automotive management, communications, sales, inventory control, customer service, and OSHA. At some point she was certified as an auto parts professional. (AR 45). On her Form SSA-3368, Daniels provided that she had previously worked as a parts department worker, key counter worker, and an installer service specialist. (AR 195). At the hearing before the ALJ, she testified that she had to leave work several times and go to the emergency room due to back pain. (AR 45). Daniels testified that at her last job, she was moved to a new location and could not bring her stool with her, and the standing caused more back pain. (AR 45). She also told her treating physician that her work-related stress resulted from conflicts

2

with her boss and quit her job due to her back pain, even though her boss offered her shorter shifts in order to accommodate her. (AR 24). She also testified that she couldn't find a job because of her lack of computer skills. (AR 46).

Daniels was prescribed medication for several conditions, including insomnia, chronic back pain, pain, depression, allergies related to working with auto parts, and anxiety. (AR 197). She testified that her sleep is severely affected by her condition, and her medication causes her tiredness. (AR 57). According to Daniels, she still has depression and PTSD. (AR 57. 63). Daniels also stated she can no longer stand, bend, stoop, or lift for a short amount of time. (AR 24, 59). She has trouble putting her pants on. (AR 62).

Further, Daniels testified that she had surgery on her left elbow and wrist, and still feels pain in her elbow as well as a reduced range of motion (AR 46), although the ALJ noted that she demonstrated a full range of motion and strength during her consultative medical exams, and she has had no further treatment on her elbow or wrist since her surgery. (AR 16). Daniels lived by herself, and prepares her own meals. (AR 43, 206). She says that it is painful to get in and out of the car and to sit for long periods of time. (AR 43). Although she is capable of completing some household chores for about three or four hours a day, Daniels said that it is too painful for her to do more strenuous chores, such as gardening and vacuuming. (AR 61-62). She cared for her infant granddaughter in the evenings after work from July 2012 until July 2013. (AR 27). She sometimes swims to relieve the pressure on her joints. On her function report, she noted that she does her own shopping and is able to pay her bills. (AR 207).

At the hearing, after listening to Daniels' testimony, the ALJ posed his hypothetical questions to the vocational expert (VE), Brian Paprocki. First, the ALJ asked the VE to consider an individual the Claimant's age, education, and work experience, assuming the individual is limited to performing light work, assuming

the individual has a combination of impairments including pain, side effects from medication, and a mental impairment that the individual is reasonably limited to performing simply, routine, or repetitive tasks on a sustained basis. Additionally, the hypothetical assumed that the work must not require more than usual routine changes in work settings or duties. (AR 68). The VE testified that under this hypothetical, Daniels' could not perform her past work. The VE responded that, given the aforementioned limitations, the following were representative jobs that could be performed by such a person: a routing clerk or a collator operator. (AR 68).

The ALJ's second hypothetical assumed the same restrictions but assumed the additional limitations: the individual should avoid more than occasional postural activities, no more than occasional climbing, balancing, kneeling, stooping, crouching, or crawling; the individual should have the opportunity to alternate between sitting and standing to relieve pain; and the individual has a history of allergies and asthma, and the individual should avoid concentrated exposure to fumes, odors, dust, and gases. The VE responded with the following jobs: a page in a library or electrical assembler. (AR 69). The ALJ then asked whether there were any sedentary jobs that the VE could identify under the hypotheticals, to which the VE responded with the following: envelope addresser, lampshade assembler, or foundation maker. The VE added that these jobs allow for sitting or standing at will throughout the day. (AR 70).

In his written Decision, issued three months before the Claimant's 50th birthday, the ALJ applied the standard five-step sequential evaluation process and ultimately found that Daniels was not disabled from July 9, 2012, through March 17, 2014, the date of the Decision. The ALJ determined that Daniels satisfied Step One because she had not engaged in substantial gainful activity during the period since her alleged onset date of July 9, 2012. (AR 15). At Step Two, the ALJ found

that Daniels suffered from the following severe impairments: chronic pain syndrome with mild degenerative changes to the lumbar spine, rule out somatoform disorder, hypertension, a history of asthma, an affective disorder, an anxiety disorder, and rule out substance abuse. (AR 15).

At Step Three, the ALJ found that the medical evidence did not establish that Daniels' impairments met or medically equaled the severity of one of the listed impairments, either individually or in combination. (AR 17). Specifically, the ALJ did not find that Daniels met Listing 1.02 (Major dysfunction of a joint(s)), 1.04 (Disorders of the spine), or 3.03 (Asthma). Further, the ALJ specified that Daniels did not meet the mental listings for 12.04 (Affective disorder), or 12.06 (Anxiety-related disorders). (AR 18). Similarly, the ALJ found that the claimant has no restrictions in activities of daily living. (AR 18). Importantly, the ALJ did note that Daniels has moderate difficulties with regard to concentration, persistence, or pace. (AR 19).

The ALJ found that the claimant has the residual functional capacity (RFC) to perform sedentary work, subject to the following limitations: she can climb, balance, stoop, crouch, and/or crawl no more than occasionally; must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and restricted to simple, routine, repetitive tasks on a sustained basis with no more than ordinary and routine changes in work setting or duties. (AR 20). The ALJ specifically referenced Daniels' own testimony, particular medical records pertaining to her impairments, records from Daniels' treating doctors, consultative examinations, State agency medical consultants, and the Vocation Expert's testimony in reaching his decision. The ALJ also noted that although Daniels claims she has physical complaints of pain, he saw minimal objective evidence, and her pain management specialist wrote that her spine revealed age appropriate changes. (AR 21).

Regarding Daniels' mental impairments, the ALJ discussed the Claimant's limitations regarding reduced concentration, difficulty coping with changes in the work place, and subjective difficulty with memory. (AR 29). He added that her psychological pain perception appeared largely affected by the combination of her mental impairments, noting that he was giving her significant benefit of the doubt despite the lack of objective or physical evidence on record. (AR 28). The ALJ determined that his RFC limitation of the performance of simple, routine, and repetitive tasks would accommodate her mental limitations. (AR 29).

At Step Four, the ALJ determined that Daniels is unable to perform any past relevant work. (AR 30). The ALJ did not make any determinations of Daniels' transferability of job skills because the Medical-Vocational Rules supports a finding of not disabled whether or not the claimant has transferable job skills. (AR 31).

At Step Five, the ALJ determined that Daniels could perform a significant number of jobs that existed in the national economy. (AR 31).

### III

Daniels argues the following: 1) that the ALJ erred by mechanically applying the age category to Plaintiff when she was on the borderline of the age category, and 2) the ALJ erred when he failed to properly consider Plaintiff's mental limitations in his residual functional capacity (RFC) determination and in the hypothetical to the vocational expert (VE). (Doc. 16). The Court will address each argument in turn.

### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. See *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).

Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. See 20 C.F.R. § 404.1566 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. See 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;
2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3)   suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
4)   is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
5)   is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

## B

First, Daniels argues that the evidence supports a liberal application of the age categories provided in 20 C.F.R. § 404, Subpt. P, App. 2; and 20 C.F.R. § 404.1563. At the time of the ALJ's written Decision was issued, Daniels was three months and nine days shy of her fiftieth birthday. (Doc. 16, p. 3) (Tr. 80). Daniels argues that agency regulations state that the categories shall not be applied mechanically in a borderline situation, and the higher age category will result in a finding of "disabled" if Daniels is found to not have transferable skills. (Doc. 16, p. 3). (20 C.F.R. § 404.1563). Daniels also adds that the ALJ never made a finding with respect to transferable job skills. (Doc. 16, p. 4).

The Commissioner counters that the Hearings, Appeals and Litigation Law Manual (HALLEX), used by the agency to interpret the regulations and provide procedural guidance, does not require an ALJ to explain why the older age category was not used. (Doc. 19, p. 3). Commissioner adds that even if ALJ considered a borderline age situation, he was not required to discuss it. (Doc. 19, p. 4). Further, Commissioner argues that it was the Claimant's burden to show that the ALJ's erroneous ruling resulted in prejudice. (Doc. 19, p. 5).

The Social Security Administration (SSA) publishes the Medical Vocational Rules as a guide for adjudicators in determining whether a claimant is disabled. 20 C.F.R. § 404.1563(b). A claimant's chronological age is one vocational factor considered along with the record and the ALJ's findings. The age categories are: younger person (under age 50), person closely approaching advanced age (50-54), and person of advanced age (age 55 or older). *Id.*

When a claimant is close to reaching a higher age category, and age would be a determining factor in a finding of disability, there is a borderline age situation. The regulations provide:

> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b).

The SSA's internal Hearings, Appeals, and Litigation Law Manual (HALLEX)[2] at I-2-2-42 and I-3-3-25 states that a borderline age situation does not exist unless using the higher age category affects the outcome of the decision. Further, the ALJ is not to automatically use the higher age category, but instead evaluates the overall impact of all the factors in the claimant's ability to adjust to doing other work. See also 20 CFR §§ 404.1563, 416.963, and 404, Subpt. P, App. 2; see also Program Operations Manual System (POMS) DI 25015.006. While HALLEX does not require an ALJ to explain use of the claimant's chronological age, the ALJ's decision can only be sustained if supported by substantial evidence. 42 U.S.C. § 405(g).

In his decision, the ALJ included no discussion as to his application of the age categories. The ALJ did not identify that Daniel's age category was three months from the higher age category, "closely approaching advanced age." 20 C.F.R. § 404, Subpt. P, App. 2. Neither did the ALJ address the question of whether Daniels had transferable work skills, because the Medical-Vocational Rules supported a finding of not disabled whether or not the claimant had transferable job skills. (AR 31). After considering all of the medical and non-medical evidence and all of the testimony, the ALJ concluded that Daniels was not disabled, whether or not her skills were transferable. (AR 19).

The Court does not find a remand is necessary for two reasons. First, the ALJ did not find a borderline age situation existed, and therefore was not required to discuss it. The Claimant alleges her disability began on July 9, 2012, when she was 48 years old. The hearing before the ALJ occurred on October 1, 2013, when the Claimant was 49. The ALJ's Decision was issued on March 17, 2014, when the

---

[2] The HALLEX "is a policy manual written to convey 'guiding principles, procedural guidance and information to the Office of Hearing and Appeals Staff.'" *DiRosa v Astrue*, 2012 WL 2885112, *5 (ND Ill), quoting HALLEX, Chapter I-1-001.

10

Claimant was three months shy of turning 50. It is evident, however, from the ALJ's detailed analysis in Step Three (AR 20-30), that he carefully considered the evidence and testimony from the time period before a borderline age period can be considered.[3] According to the record, no additional medical evidence was submitted to the ALJ after the hearing, so the evidence remained the same. Further, the Claimant did not present any evidence that her age affected her alleged impairments. Therefore, the Court does not find that the age category was mechanically applied.

Second, and more importantly, the ALJ's decision is supported by the weight of the evidence; because the higher age category would not have resulted in a different outcome, he was not required to discuss his use of the Claimant's chronological age. See *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2003) ("an ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence") (internal citations and quotations omitted).

According to the Medical-Vocation Rules, if the ALJ had placed Daniels in the higher age category, there is a *possibility* that she would have been found disabled. If the ALJ determined a borderline situation existed, he still retained the discretion to use the Claimant's chronological age. 20 C.F.R. § 404.1563(b). The ALJ is required to discuss why he used the Claimant's chronological age only if the higher age category affects the outcome of the Decision.

In the instant case, the higher age category would not affect the outcome of the ALJ Decision, because the ALJ relied upon the VE's testimony that Daniels would be able to perform the requirements of representative unskilled sedentary occupations such as an envelope addresser or assembly work. (AR 31).

---

[3] The SSA defines a "few months" as "a period not to exceed six months." HALLEX I-2-2-42(B)(1).

To illustrate, Claimant argues that the Medical-Vocational Rules, which the ALJ used as a framework in his Decision, indicate that transferability of the Claimant's skills is relevant because it could support a finding of not disabled. 20 C.F.R. § 404, Subpt. P, App. 2. Specifically, whether or not the Claimant's skills are transferrable and whether or not her education and training provides for direct entry into skilled work could result in a determination other than not disabled. 20 C.F.R. § 404, Subpt. P, App. 2 (R. 201.21; 201.22; 201.14; 201.16). However, the VE identified several unskilled jobs that Daniels could perform, even without her education and training. The hypotheticals posed to the VE included the Claimant's severe impairments. The transferability and training would not change the outcome of the instant case, and the ALJ would find the Claimant not disabled. Accordingly, a remand is not appropriate because the Court is convinced that the ALJ will reach the same result. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir 2011)

## C

Second, Daniels argues that the ALJ's mental RFC finding does not adequately account for her mental impairments. The ALJ found that Daniels' affective disorder and anxiety disorder were severe impairments, and moderate difficulties with maintaining concentration, persistence, or pace. (AR 15, 19). Daniels posits that the ALJ was also obligated to present all limitations associated with her mental impairments to the hypothetical to the VE. The Commissioner argues that the Plaintiff does not challenge the weight afforded to the medical opinions, identify evidence in the record contrary to the findings, or maintain that the ALJ's RFC determination materially conflicts with these opinions. (Doc. 19, at 6).

i

"Ordinarily, an ALJ's hypothetical questions to a VE must include all limitations supported by medical evidence in the record." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (internal citation omitted).  In other words, an ALJ must orient the VE to the totality of the claimant's limitations, including those pertaining to deficiencies in concentration, persistence, or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).  Also, "limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace." *Id*. at 620. The Seventh Circuit Court of Appeals, however, has explained that it is not necessary that the ALJ use the "precise terminology" of "concentration, persistence and pace." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

In the instant case, the ALJ carefully considered the Claimant's mental impairments when he made the RFC determination. The Court can accordingly trace the path of the ALJ's reasoning in formulating the mental RFC. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The detailed descriptions of each record supporting an alleged impairment demonstrate that the ALJ considered Daniels' mental limitations. Substantial evidence supports the ALJ's RFC finding.

In the RFC determination, the ALJ discussed Daniels' objective clinical evidence and her psychological perception of pain, and he indicated there was a lack of physical evidence of her pain. (AR 21-22). The ALJ described her past mental health, including her depression. (AR 23). The ALJ also noted that there was a lack of records concerning her mental health care. Specifically, the Claimant

did not receive consistent medical management of her psychological impairments between October 2012 and July 2013.

The ALJ also discussed an incident in July 2013 where the Claimant had become intoxicated and depressed, and sought help at an emergency department. The Claimant testified that she drank alcohol to relieve her back pain, but it worsened her depression so she sought help. (AR 54-55). The ALJ noted that this is the only instance of seeking mental health care while intoxicated and claimant testified that she no longer drinks. (AR 24). The ALJ later reasoned that Daniels admitted she lied about her depression and suicidal thoughts in order to be admitted for pain treatment. (AR 25). Significantly, the ALJ gave details about her mood and appearance in his conclusion that this was the only period of exacerbated symptoms in the record. (AR 25-26).

Moreover, the ALJ explained why he was limiting the Claimant to the performance of simple, routine, and repetitive tasks. Specifically, her treating physician's records state that more than ordinary workplace stressors and changes in routine affected her symptoms. (AR 29, 30). The ALJ also added the limitations of work with no more than occasional changes in work setting or duties, due to Daniels' decreased concentration and subjective difficulty with memory. (AR 29). The ALJ added that Daniels consistently reported pain throughout her records, and elaborated on which evidence supported the conclusion that her perceived pain was a result of her combination of mental impairments. (AR 28). Consequently, he limited her RFC to sedentary work. (AR 28).

The ALJ also indicated that the visit with Dr. Sujatha Govindaiah was the only visit under the period of review. In this visit, Daniels mentioned that she experiences mild anxiety attacks. Dr. Govindaiah noted that she appeared to have significant mental functioning, was well groomed and active, made eye contact, and had an average demeanor and full affect. (AR 24). The ALJ stated that Daniels

reported she was not taking her prescribed medication for anxiety and depression. (AR 24).

The ALJ found that Daniels demonstrated significant mental functioning during her consultative psychological exam, reporting depression and anxiety. (AR 24). During her mental status examination, the examiner found her attention to be adequate, though she had a limited ability to concentrate and had mild depression. (AR 25). He also found that she showed intact recent and remote memory capacity. (AR 25).

## ii

Further, the hypothetical posed to the VE properly included the Claimant's mental impairments. The ALJ added the following limitations to the first hypothetical (AR 67):

> I'd like you to assume this individual is due to a combination of impairments including pain, side effects from medication and a mental impairment that this individual is reasonably limited to performing simple, routine or repetitive tasks on a sustained basis. I'd also like you to assume that any work must not require more than usual routine changes in work setting or duties.

Although the ALJ found that the Claimant had a moderate limitation on her ability to maintain concentration, persistence, or pace (AR 28), the ALJ did not pose those limitations verbatim to the VE. However, the verbiage that was used here does not require a remand.

"Only if the record shows that a doctor used particular descriptive language to describe what work a claimant can perform in spite of his limitations can the ALJ use that language in the RFC or hypothetical question to the VE." *Conley v. Astrue*, 692 F. Supp. 2d 1004, 1009 (C.D. Ill. 2010).

The ALJ reasonably relied upon Dr. Govandiaiah's records that the Claimant demonstrated increased mental health symptoms in response to more than ordinary workplace stressors and changes in routine. (AR 29). In the hypothetical, the ALJ referred to these limitations as "routine" and "repetitive." The ALJ limited the Claimant to "simple, routine, repetitive tasks" due to her decreased concentration and subjective difficulty with memory. (AR 29). The ALJ also limited her to "no more than occasional changes in work setting or duties" to accommodate her decreased concentration. (AR 29). See *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir 2002) (concluding that doctor's opinion of claimant's mental RFC as "moderately limited," translated by the doctor into "low-stress, repetitive work" was reasonably relied upon by the ALJ in formulating the hypothetical presented to the VE which included the limitation of "low-stress, repetitive work"). Therefore, the Claimant's limitations were accounted for in the hypothetical.

The hypothetical was in conformity with the ALJ's determinations as to disability, and the VE's testimony was in conformity with the hypothetical presented to her. The limitations the ALJ presented to the VE did orient the VE to the totality of Daniels' limitations in those areas supported by the record. The ALJ built an accurate and logical bridge from the evidence to her conclusions as articulated in the RFC finding and questions to the VE to enable the Court to assess the ALJ's ultimate finding of non-disability. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir 2002). Substantial evidence supports those conclusions.

## IV

For the reasons set forth above, the Court GRANTS the Commissioner's Motion for Summary Affirmance (Doc. 18) and DENIES Plaintiff's Motion for Summary Judgment (Doc. 15). This matter is now terminated.

*It is so recommended.*

Entered on September 13, 2016.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE